IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE ING GROEP, N.V. ERISA
LITIGATION

CIVIL ACTION NO.

THIS DOCUMENT RELATES TO:
All Actions

1:09-CV-0400

### ORDER & OPINION

This case is presently before the Court on defendants' Motion to Dismiss [34], defendants' Motion for Leave to File Corrected Memorandum of Law [35], and plaintiffs' Motion to Strike Exhibits J, K, L, M, N, O, P, and R to Defendants' Motion to Dismiss ("Motion to Strike") [46]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendants' Motion to Dismiss [35] should be **GRANTED**, defendants' Motion for Leave to File Corrected Memorandum of Law [35] should be **GRANTED**, and plaintiffs' Motion to Strike [46] should be **DENIED**.

### BACKGROUND

This case arises under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiffs Kent Sewright ("Sewright") and Deadre Diggs ("Diggs") assert that defendants breached fiduciary duties under ERISA by permitting plaintiffs to purchase shares of ING Groep, N.V. ("ING") in the ING Americas

AO 72A
(Rev.8/82)

Savings Plan for ILIAC Agents ("ILIAC Plan") and the Employee Stock Option Plan ("Americas Plan"). Plaintiffs allege that they were participants in the Americas Plan from June 1, 2007 to the present. (ACC [21] at ¶¶ 17, 18, 64.) Plaintiffs acknowledge that they were never participants in the ILIAC Plan. (*Id.*)

Defendant ING is "a global financial institution of Dutch origin offering banking, investments, life insurance, and retirement services." (*Id.* at ¶ 19.) Defendants ING North America Insurance Corporation and ILIAC are subsidiaries of ING and the sponsors of the Americas Plan and the ILIAC Plan, respectively. (*Id.* at ¶¶ 49, 54.) Defendant ING U.S. Pension Committee is the administrator of both plans. (*Id.* at ¶ 57.) Defendants Delahanty, Harris, Shattuck, and Wheat are members of the Committee (collectively "Committee defendants").[1] Defendant McInerney is a member of ING's Executive Board, defendant Burton is the Senior Vice President at ING North America Insurance Corporation, and defendant Smith is the CEO of ING U.S. Retirement Services.[2] (ACC [21] at ¶¶ 26, 51, 55.)

Like most financial institutions, ING was negatively affected

---

[1]   The Amended Consolidated Complaint also names defendant Shattuck in her capacity as Director of Corporate Benefits at ING North America Insurance Corporation. (ACC [21] at ¶ 50.)

[2]   The Amended Consolidated Complaint names numerous other defendants, including ING itself. (ACC [21] at ¶¶ 19, 21-25, 27-29, 34-40.) However, plaintiff did not serve these defendants with the ACC.

2

by the worldwide economic recession in 2008 and 2009.  (*Id.* at ¶¶ 142, 145).  ING's stock fell from $40.40 on April 28, 2008 to a low of $3.03 on March 5, 2009.  (*Id.*)  On June 8, 2009, the date plaintiffs filed the complaint, the price was back up to $10.89.  (*Id.*)  Generally, the fluctuations in ING's stock tracked the market.  (*See* Mot. to Dismiss [34] at Ex. N.)  Throughout the period of decline in the market, ING disclosed in its SEC filings the impact of changing market conditions.  (*Id.*)

In October 2008, the Dutch government provided a €10 billion infusion of capital to ING, which enabled ING to pay down its debt and increase shareholders' equity.  (ACC [21] at ¶ 158.)  Since that time, ING has continued to take measures to fortify its position in the market in light of the new market conditions.  (*See* Mot. to Dismiss [34] at Ex. R.)

The plans at issue in this case are "eligible individual account plans" ("EIAPs") within the meaning of 29 U.S.C. § 1107(d)(3).  They provide retirement income to eligible employees.  Both are voluntary contribution plans in which participants manage and direct investment in their own accounts.  (ACC [21] at ¶¶ 72, 86.)  Both plans require ING stock be included as an investment option:

> The Committee shall determine the investment options which will be made available under the plan from time to time, and may add or delete investment options, except for the

3

> Company Stock investment option which, consistent with the status of a portion of the Plan as an employee stock ownership plan, shall always be an investment option under the Plan, and the Committee shall have no discretion with respect to investments in or disposition of Company stock.

(Americas Plan (2008) at § 6.2(a), attached as Ex. A to Mot. to Dismiss [34]).   Pursuant to the above provision, none of the defendants had the discretion or authority to eliminate ING stock from the list of alternatives.   (Id.)

A class action securities complaint was filed against ING in the Southern District of New York in February 2009.   See Freidus v. ING Groep N.V., et al., No. 09-cv-1049 (S.D.N.Y. Feb. 5, 2009). Several copycat cases followed, and all were consolidated with the Freidus action.   Id. at Docket 32, Consolidation Order.   Plaintiff Sewright filed a complaint in this Court on February 13, 2009, one week after Freidus was filed.   Plaintiff Diggs filed a complaint asserting similar claims on March 5, 2009 in the Southern District of New York, even though the Americas Plan provides that the Northern District of Georgia has exclusive jurisdiction over cases arising under the plan.   Diggs v. ING Groep N.V., No. 09-cv-2038 (S.D.N.Y. Mar. 5, 2009).   After being threatened with a motion to transfer, Diggs withdrew her action and filed here.   Diggs v. ING Groep N.V., 1:09-cv-1100 (N.D. Ga. Apr. 24, 2009).   Her case was consolidated with Sewright's, and plaintiffs filed an Amended

4

Consolidated Complaint ("ACC") on June 8, 2009.

In the ACC, plaintiffs allege that defendants were ERISA fiduciaries pursuant to 29 U.S.C. § 1102(a)(1), or *de facto* ERISA fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A), and thus were bound by the duties of loyalty, exclusive purpose, and prudence. (ACC [21] at ¶¶ 222, 256, 267, 275.) Plaintiffs contend that defendants breached those duties by: (1) failing to prudently and loyally manage plans and assets, (2) failing to provide complete and accurate information to the plans' participants, (3) failing to monitor fiduciaries, and (4) failing to avoid conflicts of interest. (*Id.* at ¶¶ 220-272.) Plaintiffs also assert a claim for co-fiduciary liability. (*Id.* at ¶¶ 273-284.)

Defendants have filed a motion to dismiss the ACC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[3] (Defs.' Mot. to Dismiss [34], [35].) Plaintiffs have filed a related motion to strike several exhibits to defendants' motion. (Pls.' Mot. to Strike [46].) Both of those motions are presently before the Court.

---

[3] After they filed their motion to dismiss, defendants filed a motion for leave to file a corrected memorandum of law in support of their motion. (Defs.' Mot. to File Corrected Memo. of Law [35].) The corrected memorandum includes an accidentally omitted table of authorities and addresses two formatting errors. (*Id.*) The Court **GRANTS** defendants' motion to file a corrected memorandum, and will refer to the corrected memorandum in ruling on the motion to dismiss.

5

## DISCUSSION

### I.   Motion to Strike

Plaintiffs move to strike exhibits J, K, L, M, N, O, P, and R to defendants' motion to dismiss. (Mot. to Strike [46].) Plaintiffs request in the alternative that the Court convert defendants' motion into a motion for summary judgment and permit plaintiffs to conduct discovery. (*Id.* at 2.) Plaintiffs argue that the exhibits are not appropriate for consideration on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) because they go beyond the four corners of the complaint. (*Id.*) Plaintiffs contend further that the exhibits are hearsay, and that the statements within the exhibits are double hearsay. (*Id.*)

When deciding a motion to dismiss, the Court must limit its consideration to well-pleaded factual allegations, judicially noticed matters, and documents central to or referred to in the complaint. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Federal Rule of Evidence 201(b) allows a court to take judicial notice of facts that are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). The Court may take judicial notice at any point in the proceeding, including during a motion to dismiss. FED. R. EVID. 201(f).

6

**A.   The Court Takes Judicial Notice of Generally Known Market Conditions During the Relevant Period: Exhibits J, K, M, N, O, and P**

Plaintiffs concede that exhibits J, K, M, N, O, and P address generally known market conditions during the relevant time period. (Mot. to Strike [46] at 4.)   Courts may take judicial notice of general economic conditions, stock prices, and market trends.   *La Grasta*, 358 F.3d at 842 (finding judicial notice appropriate because stock prices are "not subject to reasonable dispute").   All of the referenced exhibits reflect general economic and market conditions. (*See* Mot. to Dismiss [34] at Exs. J, K, M, N, O, and P.)   They are thus appropriately subject to judicial notice.

Moreover, a court may consider a document that is "outside the four corners of the complaint" that is attached to a motion to dismiss if it is (1) "central to the plaintiff's claim" and (2) "undisputed."   *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).   *See also Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (permitting consideration of documents outside the four corners of the complaint).   Contrary to plaintiff's argument, these exhibits are central to the complaint because they show the condition of the market during the relevant time period.   Accordingly, the court takes judicial notice of these exhibits.

7

**B.    The Court Takes Judicial Notice of Defendants' SEC Filings**

The remaining two exhibits, Exhibits L and R, are excerpted from publicly available SEC filings, one of which plaintiffs reference in their complaint. (*See* ACC [21] at ¶ 140, referencing ING's Annual Report Form 20-F, attached as Ex. L to defendants' Mot. to Dismiss [34].) The Eleventh Circuit has found that "[i]t is highly impractical and inconsistent with Fed. R. Evid. 201 to preclude a district court from considering [SEC] documents when faced with a motion to dismiss" and when "no serious question as to their authenticity can exist." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276-77 (11th Cir. 1999) (finding that when deciding a motion to dismiss, a court may "consider public documents required by law to be and which actually have been filed with the SEC"). Plaintiffs do not dispute the accuracy of any of the information in these exhibits. The Court thus takes judicial notice of this information. FED. R. CIV. P. 10(c) ("a statement in a pleading may be adopted by reference . . . in any other pleading or motion").

**C.    The Exhibits Are Not Hearsay**

Finally, the Court rejects plaintiffs' argument that the exhibits violate the hearsay rule. As an initial matter, plaintiffs do not state specifically what statements are inadmissible hearsay. In any case, the exhibits were offered as evidence of the perception of the general condition of the marketplace during the relevant time

8

period, and not to prove the truth of the matters asserted in the exhibits.  *See* Fed. R. Evid. 801(c) and *City of Tuscaloosa v. Harcros Chem., Inc.,* 158 F.3d 548, 557 (11th Cir. 1998).  Even if the exhibits were hearsay, they would qualify as an exception to hearsay under Federal Rules of Evidence 803(8) ("[p]ublic records and reports") and 803(17) ("[m]arket reports, commercial publications").  FED. R. EVID. 803(8), 803(17).

D.   **The Court will not Convert the Motion to Dismiss into a Motion for Summary Judgment**

As indicated by the above discussion, judicially noticed matters are not "outside the pleadings."  *See Adamson v. Poorter,* 2007 WL 2900576, at *2 (11th Cir. 2007)(noting that conversion to a motion for summary judgment is not necessary where the court "properly takes judicial notice of attached exhibits") and *In re Infonet Serv. Corp. Sec. Litig.,* 310 F. Supp. 2d 1106, 1116 n.10 (C.D. Cal. 2003) (finding that the court did not need to convert a motion to dismiss into a motion for summary judgment where the court could take judicial notice of analyst reports that gave context about the market during relevant time period).  Accordingly, there is no basis for converting defendants' motion to dismiss into a motion for summary judgment.  For all of these reasons, the Court **DENIES** the relief requested in plaintiffs' Motion to Strike [46].

9

## II.   Motion to Dismiss

### A.   Applicable Standard

In deciding a motion to dismiss, the Court assumes that all the allegations in the complaint are true and construes all the facts in favor of the plaintiff. *Scott v. Taylor*, 405 F.3d 1251, 1253 (11th Cir. 2005) (citation omitted). That said, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has "facial plausibility" when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B.   Plaintiffs Do Not Have Standing to Pursue Claims on Behalf of the ILIAC Plan

As a preliminary matter, plaintiffs have the burden to establish that they have standing to pursue their claims. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In the ERISA context, standing has both a constitutional and a statutory component. To establish constitutional standing, a plaintiff must demonstrate that he suffered injury in fact. *Id.* at 560. To establish statutory standing, plaintiff must comply with 29 U.S.C. § 1132(a)(2), which provides that only a participant, beneficiary,

10

fiduciary, or the Secretary of Labor has standing to pursue ERISA claims.   29 U.S.C. § 1132(a)(2).

Plaintiffs cannot meet either of the above requirements as to the ILIAC Plan.  As mentioned, plaintiffs do not allege that they were ever participants in or beneficiaries of the ILIAC Plan or even that they were employees of ILIAC, a prerequisite for participating in the ILIAC Plan.  Therefore, because they were never members of the plan, they cannot establish injury in fact.  *Lujan,* 504 U.S. at 560.  Neither can plaintiff meet the statutory requirement limiting standing to plan participants, beneficiaries, and fiduciaries.  29 U.S.C. § 1132(a)(2).  *See also Acosta v. Pac. Enter.,* 950 F.2d 611, 617 (9th Cir. 1991) (finding that plaintiff "lack[ed] standing to challenge decisions affecting ERISA plans in which he d[id] not participate").

Furthermore, the fact that this case is characterized as a class action does not cure the deficiency for either type of standing.  *See Lewis v. Casey,* 518 U.S. 343, 358 n.6 (1996) ("standing is not dispensed in gross") and *Prado-Steiman ex rel. Prado v. Bush,* 221 F.3d 1266, 1280 (11th Cir. 2000) ("a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim").  Accordingly, defendants' motion to dismiss plaintiffs' claims relating to the ILIAC Plan is **GRANTED**.

11

### C.    Plaintiffs Do Not Allege Sufficient Facts to Show that All Defendants are Fiduciaries

Once standing has been established, the "threshold question" in every ERISA breach of fiduciary duty case is "whether [the defendant] was acting as a fiduciary . . . when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). ERISA provides that:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Defendants Burton and Smith do not meet the above definition for any of plaintiffs' claims, and defendant McInerney does not meet the definition with respect to Counts I and II.

### 1.    Defendants Burton and Smith are Not Fiduciaries

In the ACC, plaintiffs vaguely allege that Burton and Smith are *de facto* fiduciaries by virtue of their exercise of discretionary authority, responsibility, or control with regard to certain aspects of the Americas Plan. (ACC [21] at ¶ 51.) However, plaintiffs do not point to any provisions in the Plan giving Burton and Smith

12

discretionary authority, responsibility, or control.   Indeed, plaintiffs do not even generally describe the source of Burton and Smith's alleged discretionary authority, or the nature of Burton and Smith's responsibilities with respect to the Americas Plan.

Plaintiff's allegations with respect to Burton and Smith are a classic example of a "formulaic recitation [] of the elements of a cause of action." *Iqbal*, 129 S. Ct. at 1949. *See also In re Coca-Cola Enter., ERISA Litig.* ("*CCE*"), 2007 WL 1810211, at *12 (N.D. Ga. June 20, 2007) (Thrash, J.) ("the Complaint fails to allege that any individual [d]efendant held discretion in regards to the Plan or played a role in its administration solely by virtue of his role as an Officer."). Accordingly, defendants Burton and Smith's motion to dismiss is **GRANTED** as to all of plaintiffs' claims.

2.   <u>Defendant McInerney is Not a Fiduciary with Regard to Counts I or II</u>

In Counts I and II of the ACC, plaintiffs allege that defendant McInerney is a fiduciary because he is a member of the Executive Board of ING.   (ACC [21] at ¶ 26.)   McInerney's position on ING's Executive Board does not, in and of itself, show that he is a plan fiduciary.   *See CCE*, 2007 WL 1810211, at *12 ("Because the Directors' only fiduciary responsibility was the appointment of Committee members, each of these individuals had no duty to inform Plan participants.")   Plaintiffs do not allege any other basis for

13

imposing liability on McInerney on Counts I and II. Accordingly, the Court **GRANTS** McInerney's motion to dismiss Counts I and II.

### D.   Count I:  Plaintiffs Fail to State a Claim for Failure to Prudently and Loyally Manage the Plans and Their Assets

In Count I of the ACC, plaintiffs claim that defendants breached their fiduciary duties by failing to "prudently and loyally" manage the Americas Plan and its assets. (ACC [21] at ¶¶ 220-42.)  Plaintiffs bring this claim against ILIAC and the Committee defendants.[4] (*Id.* at ¶¶ 221.)  The claim arises solely from defendants' decision to offer company stock as an investment option under the Americas Plan.  (*Id.* at ¶¶ 220-42.)

#### 1.   Defendants' Actions Are Presumptively Prudent

Although the Eleventh Circuit has not addressed the issue, other circuits have created a presumption of prudence standard for fiduciary duty cases which provides that investment in an employer's stock is presumed to be a prudent decision. *See Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995) and *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1097 (9th Cir. 2004).  As the Ninth Circuit explained in *Wright*:

Under [the prudence] standard, an EIAP fiduciary who

---

[4]   The Court has already determined that this claim cannot stand against Burton, Smith, or McInerney, *see supra*.  Also, plaintiffs bring this claim against several defendants who have not been served and who are therefore irrelevant to the disposition of this motion.

14

invests in employer stock is presumed to have acted
consistently with ERISA; however, a plaintiff may overcome
this presumption by showing that the fiduciary abused his
or her discretion.   To rebut the presumption, 'the
plaintiff must show that the ERISA fiduciary could not have
believed reasonably that continued adherence to the [plan's
terms] was in keeping with the settlor's expectations of
how a prudent trustee would operate.'

*Wright,* 360 F.3d at 1097 (quoting *Moench v. Robertson,* 62 F.3d 553,
571 (3rd Cir. 1995)).

The Court does not expressly adopt the presumption of
prudence/abuse of discretion standard, as articulated above.   *See*
*Pedraza v. Coca-Cola Co.,* 456 F. Supp. 2d 1262, 1276 (N.D. Ga.
2006)(Evans, J.)(opining that the abuse of discretion part of the
standard is contrary to the express provisions of ERISA).   The Court
nevertheless finds that, at the very least, defendants are entitled
to a presumption that they acted prudently in complying with the
terms of the Americas Plan and offering ING stock as an investment
option.   *Id.   See also, Wright,* 360 F.3d at 1097.   Assuming the
presumption of prudence applies, plaintiffs do not allege any facts
sufficient to overcome the presumption.   *See Moench v. Robertson,* 62
F.3d 553, 572 (3rd Cir. 1995)(holding that plaintiffs can overcome
the presumption of prudence if an employer is on the "brink of
collapse").[5]   Accordingly, plaintiffs do not assert a "facially

_____

    [5]   Several courts have rejected the "abuse of discretion" part
of the *Moench* formula as conflicting with ERISA's statutory
provisions exempting EIAP fiduciaries from liability based on over-

15

plausible" claim of fiduciary liability in Count I of the ACC. *Iqbal,* 129 S. Ct. at 1949.

## 2.   Defendants Were Not Fiduciaries

In addition, it is apparent from the ACC that the defendants did not act as fiduciaries with regard to the decision to offer ING stock as an investment option.  A person is an ERISA fiduciary only to the extent that he exercises, or has any, discretionary authority, control, or responsibility.  *See* 29 U.S.C. § 1002(21)(A) and *Cotton v. Mass Mut. Life Ins. Co.,* 402 F.3d 1267, 1277 (11th Cir. 2005).  The Americas Plan expressly required that participants be provided with the option of investing in ING stock.  (Americas Plan at § 6.2(a), attached as Ex. A to Mot. to Strike [34].)  As the ING option was mandated by the Plan, defendants cannot be liable for breach of fiduciary duty on the basis of their decision to offer ING stock.  *See Pedraza,* 456 F. Supp. 2d 1262 at 1273-74 ("With respect to the . . . choice of investment component . . . no exercise of fiduciary duty was implicated.  The Plan specifically required . . . that Coca-Cola stock be offered as one of the choice of investment options.") and *CCE,* 2007 WL 1810211, at *9 ("Because the Plan

---

investment in employer stock.  *See Pedraza,* 456 F. Supp. 2d at 1276.
In any case, plaintiffs do not, and cannot credibly, allege that ING
was on the "brink of collapse."  Plaintiffs concede that ING took
measures to fortify its position in the market, and that its stock
price rebounded from a low of $3.03 to $10.89 on the date that
plaintiffs filed their complaint.  (ACC [21] at ¶¶ 142, 145.)

16

AO 72A
(Rev.8/82)

expressly establishes CCE stock as an investment option, the Committee has the discretion only to select additional investment options, not to eliminate CCE stock from the mix").

3.   Defendants Did Not Have a Duty to Diversify

Even assuming that defendants were fiduciaries, they did not violate any duty under ERISA by offering ING stock as an investment option, or by failing to require that participants diversify their investments. As mentioned, the Americas Plan is an EIAP. (Americas Plan at § 11.1.) ERISA is clear that, with respect to an EIAP, "the diversification requirement . . . and the prudence requirement . . . [are] not violated by acquisition or holding of . . . qualifying employer securities." 29 U.S.C. § 1104(a)(2). Therefore, "EIAP fiduciaries do not have a duty to diversify and do not act imprudently by not diversifying the assets of an EIAP." *Smith v. Delta Air Lines, Inc.*, 422 F. Supp. 2d 1310, 1325 (N.D. Ga. 2006)(Evans, J.). *See also CCE*, 2007 WL 1810211 at *9 and *Pedraza*, 456 F. Supp. 2d at 1270.

In short, the plain language of the plan required that participants be given the option of investing in ING stock. Defendants complied with this requirement, as mandated by the Plan. Their compliance did not involve the exercise of any discretion, and did not violate any duties imposed by ERISA. Moreover, their compliance is presumed to be prudent, a presumption that plaintiffs

17

offer no allegations to rebut. Accordingly, defendants motion to dismiss the claims asserted in Count I of the ACC is **GRANTED**.

> **E.   Count II: Plaintiffs Fail to State a Claim for Failure to Provide Complete and Accurate Information to Plan Participants**

In Count II of the ACC, plaintiffs allege that the Committee defendants failed to provide complete and accurate information to plan participants and beneficiaries.   (ACC [21] at ¶¶ 244.) Specifically, plaintiffs claim that the Committee defendants breached their duties under ERISA by failing to warn plan participants about the potential risks associated with ING stock. (*Id.*)  Their claim is primarily based on defendants' representations or omissions in various SEC filings.[6]

> 1.   Representations in SEC Filings are not Actionable Under ERISA

As a preliminary matter, representations in SEC filings are actionable not under ERISA, but rather under the securities laws.

___

[6]   Plaintiffs also allege that certain individual defendants made false statements about the health of ING in other media, such as press releases and newspaper articles. (*See* ACC [21] at ¶¶ 138, 143, 144, 152-54, 163.)  However, none of the referenced statements are alleged to have been directed at plan participants, a requirement for liability under ERISA.   *See In re Calpine Corp.*, 2005 WL 3288469 at *10 (N.D. Cal. 2005)("[P]ress releases are, as a matter of law, directed at the market as a whole and not at ERISA plan participants.").   The only document that was specifically directed at plan participants was a brochure, but plaintiffs do not allege that the brochure was inaccurate.   In fact, the brochure warns that "account values will fluctuate with market conditions and are subject to change."   (ACC [21] at ¶ 160.)

AO 72A
(Rev.8/82)

*See In re McKesson HBOC, Inc.,* 391 F. Supp. 2d 812, 835 (N.D. Cal. 2005)("participants do not need a remedy under ERISA to obtain relief for a fiduciary's false statements or omissions; indeed, they can invoke the securities laws"). Only actions taken as a fiduciary of a plan can give rise to ERISA liability, and preparation of SEC filings is not such a discretionary act. *See Sutton v. BellSouth Telecomms., Inc.,* 189 F.3d 1318, 1321 (11th Cir. 1999) ("corporate managerial decisions are not governed by ERISA because they do not involve discretionary acts regarding plan administration").

Additionally, securities laws mandate that SEC filings be incorporated by reference into the prospectus for stock issued through an EIAP plan when employer stock is offered as an investment option.[7] Such incorporation by reference does not give rise to liability under ERISA, however, because no defendant has any discretion in an ERISA fiduciary capacity. *See Kirschbaum v. Reliant Energy, Inc.,* 526 F.3d 243, 257 (5th Cir. 2008)("When it incorporated its SEC filings into the Forms S-8 and 10a Prospectus, [defendant] was discharging its corporate duties under the

---

[7]    *See* 17 C.F.R. § 239.16(b)(the Securities Act of 1933 requires issuers of "securities to be offered to employees pursuant to employee benefit plans" to file Form S-8 registration statements).    Certain SEC documents must be incorporated by reference in Form S-8s, which are disseminated to employees, and registrants can designate part of the documents as the 10(a) prospectus for stock issued through the plan. *See* 17 C.F.R. § 230.428.

19

securities laws, and was not acting as an ERISA fiduciary").

     2.    <u>Plaintiffs Fail to Allege Material Misrepresentations in SEC Filings</u>

Assuming the SEC filings are actionable, plaintiffs have not sufficiently alleged any "material misrepresentations" in the filings. The misrepresentations alleged by plaintiffs sound in fraud. *See Next Century Comm'n Corp. v. Ellis,* 318 F.3d 1023, 1030 (11th Cir. 2003)(noting that the same principles apply to fraud and misrepresentation claims). Thus, Federal Rule of Civil Procedure 9(b) and its heightened pleading requirements apply. *See CCE,* 2007 WL 1810211, at *4-6 (Rule 9(b) applies to alleged breaches of ERISA fiduciary duty to prevent "an impermissible fishing expedition by the Plaintiffs") and FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

To satisfy Rule 9(b), plaintiffs must identify:

(1) precisely what statements were made in what documents or oral representations or what omissions were made, and

(2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001) (citation and internal quotation marks omitted). Plaintiffs do not

20

come close to meeting this standard.

In the ACC, plaintiffs allege that defendants' communications were misleading for such vague reasons as: (1) ING's assets were "impaired to a much larger extent than . . . disclosed" and (2) the "Company's business model was not sound" (ACC [21] at ¶¶ 131, 164). These statements, and others like them, do not identify any particular communications to plan participants that were allegedly false or misleading, and do not specify who made the communications or how the communications were false when made. (*See* ACC [21] at ¶¶ 128, 131, 134-36, 140-41, 145, 169, 160, 163, 248-49.) Such conclusory statements do not support a claim for material misrepresentations. *See* FED. R. CIV. P. 9(b) and *Iqbal*, 129 S. Ct. at 1949.

### 3. ERISA Does Not Mandate a Duty to Disclose

Finally, and contrary to plaintiffs' argument, ERISA does not impose an obligation to disclose broad categories of non-public financial information regarding publicly traded securities. *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 405 n.15 (6th Cir. 1998)("[W]hen Congress and the Department of Labor have carefully prescribed a detailed list of matters that must be disclosed to plan participants and beneficiaries, it ill-behooves federal judges to add to that list") and *Bd. of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein,* 107 F.3d 139, 147 (2nd Cir. 1997)("ERISA

21

does not require plaintiff Administrators to disclose actuarial valuation reports."). Plaintiffs do not allege that defendants failed to comply with any of the specific disclosure requirements of ERISA. Accordingly, plaintiffs cannot state a claim under ERISA for failure to provide complete and accurate information to plan participants. Defendants' motion to dismiss the claims in Count II of the ACC is thus **GRANTED**.

**F.   Count III:  Plaintiffs Fail to State a Claim for Breach of Duty**

In Count III of the ACC, plaintiffs allege that McInerney and the Committee defendants breached their duty as fiduciaries by: (1) failing to monitor and (2) failing to provide adequate information to employees. (ACC [21] at ¶ 221, 255.) For many of the same reasons discussed above, neither of these claims is viable under ERISA.

### 1.   Failure to Monitor

A "plaintiff cannot maintain a claim of failure to monitor when those to be monitored were acting prudently." *Smith*, 422 F. Supp. 2d at 1333. As discussed, defendants acted prudently as a matter of law when they offered ING stock as an investment option because they were simply adhering to the plain terms of the Americas Plan. *See CCE*, 2007 WL 1810211, at *11 ("Because . . . the Plan's investment in CCE stock was prudent as a matter of law . . . there can be no

22

cause of action for failure to monitor a fiduciary's conduct with respect to this investment") and *Pedraza*, 456 F. Supp. 2d at 1278 (holding that the committee's lack of a role in determining investment choices precluded plaintiffs' failure to monitor claim).

Furthermore, to prove a breach of a duty to monitor, the monitoring party must have "notice of possible misadventure" by the other fiduciaries. *Pedraza*, 456 F. Supp. 2d at 1278 ("the duty to monitor . . . is not breached without the monitoring party having 'notice of possible misadventure'")(quoting *Newton v. Van Otterloo*, 756 F. Supp. 1121, 1132 (N.D. Ind. 1991)).  However, plaintiffs never state how or when any defendant became aware of "possible misadventure" by other plan fiduciaries.

### 2.   Failure to Provide Adequate Information

Plaintiffs' allegation that defendants failed to provide adequate information also fails.  Aside from the SEC filings mentioned above, which the Court has already found are not actionable, plaintiffs do not allege any inadequate information provided by defendants.  Accordingly, the Court **GRANTS** defendants' motion to dismiss the claims in Count III of the ACC.

### G.   Count IV:  Plaintiffs Fail to State a Claim for Failure to Avoid Conflicts of Interest

To state a claim for breach of the duty of loyalty based on conflicts of interest, plaintiffs must allege a specific conflict

23

and harm resulting from the conflict. *See In re McKesson,* 391 F. Supp. 2d at 835 ("No case of which the court is aware has held that ERISA fiduciaries breach their duty of loyalty simply for 'placing themselves in a position' where they might act disloyally"). Plaintiffs' allegations do not meet either requirement.

Plaintiffs' conflict of interest claim is based entirely on defendants' dual roles as plan fiduciaries and corporate officers. For example, plaintiffs argue that defendants had a conflict of interest because their "compensation was directly tied to the performance of the Company and the price of Company stock." (ACC [21] at ¶¶ 189, 269) It is well-established that such dual roles do not alone create an actionable conflict of interest under ERISA. *See DiFelice v. U.S. Airways, Inc.,* 497 F.3d 410, 421 n.6 (4th Cir. 2007) ("Mere officer or director status does not create an imputed breach of the duty of loyalty simply because an officer or director has an understandable interest in positive performance of company stock.") and *In re McKesson,* 391 F. Supp. 2d at 835 (fiduciaries must do more than simply put themselves in position to be disloyal).

Plaintiffs similarly claim that there is a conflict of interest because defendants were motivated by a desire to "increase their salaries and incentive compensation." (ACC [21] at ¶ 187.) However, this allegation does not support an alleged breach of a duty of loyalty under ERISA. Rather, "[a]s opposed to creating a

24

conflict, compensation in the form of company stock aligns the interests of plan fiduciaries with those of plan participants." *In re Huntington Bancshares, Inc.*, 620 F. Supp. 2d 842, 849 n.6 (2009). *See also In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 479 (S.D.N.Y. 2005) ("[p]laintiffs' allegation that 'a significant percentage of corporate Director and Executive Officer compensation is in the form of stock grants or stock option grants' is insufficient to allege a conflict of interest").

Neither can plaintiffs show any harm. Plaintiffs do not allege that any defendant sold the stock at an inflated price or benefitted in any other way. For this additional reason, plaintiffs' conflict of interest claim fails.

In short, because ERISA explicitly allows employers and corporate officers to be fiduciaries, plaintiff does not state a claim for a conflict of interest based solely on the fact that the plan fiduciaries were also corporate officers. *See* 29 U.S.C. § 1108. There are no other allegations in the ACC to support this claim. Accordingly, the Court **GRANTS** defendants' motion to dismiss Count IV of the ACC.

### H.   Count V:   Plaintiffs Fail to State a Claim for Co-Fiduciary Liability

Finally, plaintiffs allege that all defendants are liable under ERISA's co-fiduciary provision pursuant to 29 U.S.C. § 1105. (ACC

25

AO 72A
(Rev.8/82)

[21] at ¶¶ 274.)  "A primary breach must exist . . . in order for there to be any liability under [ERISA's co-fiduciary] provision." *CCE*, 2007 WL 1810211 at *16.  *See also Izzarelli v. Rexene Prod. Co.*, 24 F.3d 1506, 1525 n.34 (5th Cir. 1994)(holding same).  Because plaintiffs have failed to state a claim of any underlying breach, the attempt to impose co-fiduciary liability fails.

Furthermore, to state a claim under § 1105 for co-fiduciary liability, a plaintiff must plead that defendant possessed actual knowledge of the breach by another fiduciary.  *See* 29 U.S.C. § 1105(a)(1), (3) (a fiduciary is liable for co-fiduciary liability only if he "participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach . . . or has knowledge of a breach by such other fiduciary.").  Plaintiffs state only that "[e]ach [d]efendant knew of the breaches by the other fiduciaries," and that the defendants "through their high ranking positions with [ING] knew or should have known that the Company's stock was an imprudent investment." (*Id.* at ¶¶ 170, 172, 277.)  Such conclusory statements cannot state a claim.  *Iqbal*, 129 S. Ct. at 1949.  Accordingly, the Court **GRANTS** defendants' motion to dismiss Count V of the ACC.

## CONCLUSION

For the foregoing reasons, the Court concludes that defendants' Motion to Dismiss [35] should be **GRANTED**, defendants' Motion for

26

Leave to File Corrected Memorandum of Law [35] should be **GRANTED**, and plaintiffs' Motion to Strike [46] should be **DENIED**.   The Clerk is directed to close the case.

So ORDERED this 31 day of March, 2010.

_____
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

27